648 So.2d 1347 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Annie Lee MAMON, Defendant-Appellant.
No. 26337-KA.
Court of Appeal of Louisiana, Second Circuit.
December 16, 1994.
*1350 Edward L. Henderson, Ruston, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Robert W. Levy, Dist. Atty., John L. Sheehan, Asst. Dist. Atty., Ruston, for plaintiff-appellee.
*1351 Before NORRIS, HIGHTOWER and VICTORY, JJ.
NORRIS, Judge.
In July of 1993, Annie Lee Mamon was indicted for the second degree murder of Leon Sampson. La.R.S. 14:30.1. She pleaded not guilty. In August, the jury found her guilty as charged. Accordingly, the trial court sentenced her to the mandatory life imprisonment without benefit of probation, parole or suspension of sentence. She has appealed, urging eleven assignments of error. Finding no reversible error, we affirm.

Facts
Annie Mamon and Leon Sampson lived together until about September of 1992. On November 28, 1992, Annie and Leon, along with numerous friends and relatives, attended a birthday party thrown by Angela Sye for her live-in boyfriend, Charles Underwood (Kathryn Underwood's brother and Annie's first cousin). The party was held at Angela Sye's residence in the West Lane Apartments. In the early evening, Annie and Leon began an argument over car keys while in the parking lot of the complex, though the testimony about the actual dispute is vague and conflicting. According to Annie, Leon became violent, slapping, punching and biting her. Charles pulled them apart and Annie ran inside the apartment. Annie testified that she showed the bite on her hand to Ronald Spivey (a distant cousin of hers), Kathryn Underwood and Angela Sye. Ronald went outside to confront Leon. Kathryn Underwood followed him outside. Annie then wrapped a towel around her hand, went into the kitchen and picked up a knife, and walked back outside. At trial, Annie testified that she went outside again because she was badly hurt and wanted to get to a doctor.[1] She testified that as she approached Leon, who was standing near Charles and behind Ronald, he "started after her." At this time, she swung the knife at Leon, but testified that she could not have made contact because of the distance. She maintained that she never intended to kill him, but merely used the knife as protection, to keep him away from her. Annie's testimony conflicted at times with her previous statements to police. In an earlier written statement, she omitted that she went back outside after her first confrontation with Leon, and denied ever having a knife. R. pp. 1066-1068.
Three other people, Kathryn Underwood, Ronald Spivey, and Charles Underwood, witnessed the stabbing. Ms. Underwood related a different version of the events. She testified that Annie seemed mad when she entered the apartment. Ms. Underwood recalled Annie showing her hand and stating, "look what that m**** f**** did to my hand, he bit me." R. p. 790. Annie walked straight to the kitchen and returned less than a minute later holding a knife in her injured hand. She went outside and Ms. Underwood followed, less than 10 feet behind her. She testified Annie headed directly at Leon; Ronald Spivey stood in front of him, between Annie and Leon. Ms. Underwood stated that Leon made no attempts to hit Annie or threaten her at this time. She testified that Annie stood "right behind Ronald" and swung the knife over him at Leon. On cross exam, Ms. Underwood was "sure that Leon blocked the swing." R. p. 829. However, she retracted this somewhat on redirect, admitting that she actually could not see if Leon successfully blocked the knife. R. p. 854. Annie raised the knife to swing a second time, but Ms. Underwood grabbed it from her and threw it to the ground. Ronald Spivey took Annie inside Angela's apartment. When Ms. Underwood went inside, Annie told her "not to tell anybody that she had a knife." R. p. 797.
*1352 Ronald Spivey testified that Annie seemed upset after the fight with Leon. She showed them her hand and Ronald immediately walked outside to confront Leon. With his back toward Annie during the incident, he did not see the stabbing or the knife itself; he testified that Annie touched his back and reached over his shoulder and he heard a "lick," like a thump to the chest. Ronald testified that he was within arms length of Leon.
Although Charles was present during both the argument between Annie and Leon and the stabbing, he admitted at trial that he was drunk at the time and could not accurately recall what happened. He testified that he was standing at least three feet away during the incident and never saw a knife.
After the stabbing, Leon got into his car and attempted to drive away; he lost control of the car and ran into a set of apartments in the complex. Josephine Diarse, the victim's sister and security guard for the apartment complex, called the police after receiving a call about a disturbance. She testified that she saw Annie in the parking lot after the incident, heard some fighting and overheard a name spoken. Officer Lugene Smith of the Grambling Police Department, the first to arrive on the scene, found Leon slumped over inside the car. He testified that there was blood spatter in the parking lot approximately 30 feet from Angela's apartment. Officer Matthew Means arrived shortly thereafter, and brought Annie to Lincoln General Hospital for the bite wound.
Dr. George McCormick II, forensic pathologist and Caddo coroner, performed the autopsy. He testified that the cause of death was a three and a half inch deep stab wound to the chest, which angled downward from left to right; the knife punctured two major arteries and the left lung, causing severe hemorrhage. Dr. McCormick found another stab wound, four inches deep, in the left upper arm, but estimated that this occurred at least several days before the fatal wound. Although this injury was certainly life-threatening, Dr. McCormick testified that it did not cause the victim's death. Blood alcohol tests revealed Leon was legally intoxicated; Dr. McCormick testified that this condition likely contributed to Leon's delayed reaction to the injury.
Deputy Kenneth Wesley, an investigator for Lincoln Parish Sheriff's Department, recorded (both on audio and videotape) Annie's statement on December 1, 1992. In the statement, she discussed several incidents prior to the murder when Leon had abused her. Deputy Wesley testified that he merely took defendant's statement and never participated in the actual investigation.
In December of 1992, Annie Mamon was indicted for manslaughter, La.R.S. 14:31. Later, in July of 1993, she was indicted for second degree murder, La.R.S. 14:30.1. The jury subsequently convicted her of second degree murder. The trial court sentenced her to the mandatory life imprisonment without benefit. She appealed, assigning and briefing the following errors: (1) the trial court allowed objections to be argued in the presence of the jury; (2) the record of the proceedings is incomplete; (3) the trial court allowed the introduction of other crimes evidence; (4) the trial court did not allow her to cross examine Deputy Wesley about investigative procedures; (5) the trial court did not allow Deputy Wesley to testify about defendant's past complaints of abuse by the victim; (6) the trial court did not allow defendant to fully question witnesses about her videotaped statement; (7) the trial court did not allow Josephine Diarse to relate a name she heard called out at the scene; (8) the trial court failed to declare a mistrial when the State objected during defense counsel's closing argument; and (9) the trial court failed to declare a mistrial during jury selection.[2]

Assignment Nos. 1 and 8
By these assignments, defendant argues that the trial court erred in allowing objections to be argued in front of the jury, specifically the State's objection during defense counsel's closing statement, contrary to the court's pretrial instruction to the jury that *1353 both argument and rulings on objections would occur out of the jury's presence. R. pp. 727-728.
She cites by page and line, four instances where the State argued objections during trial in the jury's presence. The first of these objections was to defense counsel's method of questioning on cross examination; the other three dealt with hearsay, none of which required the court to remove the jury. See La.C.Cr.P. art. 794. In addition, defendant does not contend that she was prejudiced in any manner by the court's failure to excuse the jury for these objections. Furthermore, defendant acknowledged that she made no contemporaneous objections to the jury's presence in these instances. She is therefore precluded from raising the error on appeal. La.C.Cr.P. art. 841 A. Defendant's first assignment does not present reversible error.
During the defense's closing argument, the State objected to counsel's reference to battered women's syndrome on the grounds that he had made no reference to it during trial.[3] Defense counsel asked that the jury be removed and then moved for a mistrial because "the State made comments in the presence of the jury during closing argument." R. p. 1120. Neither counsel presented arguments on the objection. The trial court did not rule on the State's objection or on the defense's objection; defense counsel asked for a ruling on his motion for mistrial and the court denied it. The trial court did not restrict defense counsel's argument, but defense counsel did not mention the subject again.
On appeal, defendant argues that the court should have declared a mistrial because the State's objection substantially prejudiced her by eliminating a "very integral portion" of the closing argument, and damaging the credibility of her witnesses who testified about the syndrome.
Clearly, no mandatory grounds exist to warrant a mistrial in the instant case. La.C.Cr.P. art. 770. Nor do we find that the State's objection during defense counsel's closing argument caused substantial prejudice to defendant and deprived her of a fair trial. State v. Edwards, 420 So.2d 663, 679 (La.1982); State v. Cushenberry, 407 So.2d 700, 701 (La.1981). The State merely objected and stated the ground for the objection. No arguments on the objection were made in the jury's presence. Moreover, the court did not instruct defendant to stop discussing battered women's syndrome, and thus, did not eliminate any portion of defendant's closing argument. During trial the defendant did not discuss or offer evidence pertaining to battered women's syndrome, although there was some testimony that the victim had abused defendant on occasion in the past. Defendant did not offer evidence to show that she suffered severe psychological stress as a result of the victim's abuse or that this stress affected her in any way on the night of the killing. Cf. State v. Burton, 464 So.2d 421 (La.App. 1st Cir.), writ denied 468 So.2d 570 (1985). In fact, she and the victim had lived apart for two months before the incident, and seen one another only occasionally. R. p. 1072. Finally, defense counsel did not ask for an admonition to the jury to disregard the prosecutor's comment. La.C.Cr.P. 771. In sum, defendant has demonstrated no prejudice as a result of the state's objection. The court correctly denied the defendant's motion for a mistrial. We find no reversible error.

Assignment No. 2
Defendant contends the trial court erred in failing to adequately record all proceedings in contravention of her motion for complete recordation. R. p. 117. She lists in general numerous off-the-record bench conferences between the judge and both counsel, and makes specific reference to an incident with one witness, Dr. McCormick.
In felony cases, the clerk or court stenographer shall record all proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, *1354 rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel. La.C.Cr.P. art. 843; State v. Ford, 338 So.2d 107 (La.1976). To effectuate the guarantee of an appeal in felony cases, a complete record is needed for proper support and review of assigned errors. State v. Richardson, 529 So.2d 1301, 1308 (La.App. 3d Cir.1988), writ denied 538 So.2d 587 (1989). However, an omission from the record which is inconsequential and immaterial to a proper review on appeal does not require reversal of a conviction. State v. Johnson, 438 So.2d 1091, 1104 (La.1983); State v. Ford, supra; State v. Diaz, 93-1309 (La. 4/6/94), 635 So.2d 499, 506; State v. Velez, 588 So.2d 116, 135 (La.App. 3d Cir. 1991), writ denied 592 So.2d 408 (1992); State v. Richardson, supra.
We have carefully reviewed the instances cited by defendant and find each to be inconsequential and immaterial to a proper appellate review. We also note that defendant made no contemporaneous objection during any of these bench conferences that the conferences should be recorded. The majority of off-the-record conferences related to general evidentiary or procedural objections, including hearsay, relevance, scope of examination, and repetitiveness of questions. All objections appear in the record. The actual conference between each counsel and the judge is missing, but either the court's specific ruling or its resolution of the matter is clear from the record. The defendant has neither alleged, nor do we find, any prejudice to her right of appeal resulting from the court's failure to record the substance of these particular bench conferences.
As to the particular encounter with Dr. McCormick, defendant contends he became "very hostile and belligerent" toward defense counsel, and then after he left the stand, threatened defense counsel in front of the judge and jury.[4] The record does not reflect either Dr. McCormick's alleged hostile attitude or any direct or indirect threats toward defense counsel. On the contrary, the record supports that Dr. McCormick's action on the stand, mock stabbing defense counsel, was likely done in a joking manner. We find that the record adequately reflects Dr. McCormick's testimony and the colloquy between him and defense counsel. As for the alleged threats, it is incumbent upon defendant to note for the record any alleged impropriety outside of the normal questioning of witnesses on the stand. However, defendant failed to lodge a contemporaneous objection at trial to the witness's actions as prejudicial. La.C.Cr.P. art. 841. Consequently, this assignment presents no reversible error.

Assignment No. 3
Defendant urges that the trial court erred in allowing the state to introduce other crimes evidence. Although defendant does not specify the evidence at issue in brief, the State's Prieur notice relates to her prior stabbing of the victim with a knife three days before the murder.
On August 16, 1993, the State filed its Prieur notice of intent to offer at trial evidence that Annie Mamon stabbed Leon Sampson three days before the murder to prove the defendant's motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake or accident. La.C.E. art. 404 B. Not included in this notice, but introduced at the Prieur hearing as other crimes evidence, was a statement made by defendant during the same incident (separate notice was filed by the State of its intent to use the oral statement). On August 17, the court ruled that the other crimes evidence was admissible to show intent. R. p. 181. The court noted defendant's objection to the ruling.
At trial, over defendant's objection, the State introduced the evidence of the prior stabbing through the testimony of Kathryn Underwood. She related at trial that on November 25, 1992, she drove Annie to see Leon at the home of their cousin, Judy Smith. Defendant got out of the car and *1355 walked to the porch. She returned about five minutes later, took something out of the glove compartment and walked over to Leon. About three minutes later, Annie returned holding a bloody knife, told her to lock the doors, and stated she had just "stuck" Leon. R. p. 803. She tried to get Kathryn to take the knife, but she refused. Annie wiped off the knife and put it back into the glove compartment.
On appeal, defendant contends that this evidence should not have been admitted at trial because she was never convicted of any crime in connection with this act, the act cannot be introduced to prove her bad character, the evidence does not tend to prove any element of second degree murder, and finally, the evidence is more prejudicial than probative.
Louisiana Code of Evidence art. 404 B sets forth, in part, the applicable law:
Except as provided in Article 412 [rape shield law] evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
This provision clearly recognizes other "acts," and not merely convictions. Defendant's other arguments, however, are relevant under the test for introduction of other crimes evidence.
The law of admissibility of other crimes evidence is clearly and succinctly set forth in State v. Jackson, 625 So.2d 146, 148-49 (La.1993). Admission of this evidence requires that the state: (1) comply with the notice requirements and limiting instructions set out in State v. Prieur, 277 So.2d 126, 130 (La.1973); (2) prove by clear and convincing evidence that the other act occurred and was committed by the defendant; (3) show that the evidence falls within one of the La.C.E. art. 404 B exceptions to the rule against other crimes evidence and that this exception is relevant to the outcome of the case; and (4) show that the probative value of the evidence outweighs its potential prejudicial value. State v. Jackson, supra.
The State complied with State v. Prieur, supra, furnishing defendant with written notice of its intent to offer at trial evidence of the defendant's prior act, describing the event in sufficient detail, and specifying the particular exception to the exclusionary rule under which the evidence fell. The trial court provided two limiting instructions to the jury, upon admission of the evidence and in the final charge, regarding the proper consideration of this evidence. Moreover, the defendant does not contend on appeal that the notice or limiting instructions were insufficient.
The defendant does not argue that the evidence of the other crime was not clear and convincing. In any event, we find that the State proved by clear and convincing evidence that the prior act occurred and was committed by the defendant. Although Kathryn Underwood did not see Annie stab Leon, she testified that Annie returned to the car with a bloody knife, and stated she stuck him. Annie herself admitted she said this and that she stabbed Leon on that date. R. pp. 1021-1027. Dr. McCormick performed the autopsy and testified to the stab wound in the shoulder which was inflicted a few days before the fatal wound.
Next the State must show that the act falls within an art. 404 B exception and is independently relevant and not introduced merely to show the defendant's bad character. The State argued at the Prieur hearing that the evidence of the prior stabbing tended to prove the defendant's intent. At trial, the State argued that the evidence was admissible to show the absence of a mistake or accident. In order to convict for second degree murder, the State must prove that the defendant had specific intent to kill or inflict great bodily harm upon the victim. In State v. Cupit, 189 La. 509, 179 So. 837, 839 (1938), the court stated:
This court has recognized the principle that where the element of intent is regarded as an essential ingredient of the crime *1356 charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed.
Evidence showing that defendant stabbed the victim with a knife in a strikingly similar manner just three days before the fatal stabbing tends to negate the defense that defendant acted without intent or that the charged offense was accidental. See State v. Jackson, supra; State v. Cupit, supra.
Even once such independent relevance is shown, the probative value must outweigh its prejudicial effect. The defendant failed to argue how the admission of the prior crimes evidence prejudiced her. Regardless, considering the striking similarity of the two stabbings occurring only days apart, we find as did the trial court, that the potential prejudice resulting from this evidence does not outweigh its probative value. In addition, any prejudice to defendant was minimized because she had ample opportunity on cross examination to rebut the evidence and impeach the witnesses' testimony regarding the November 25 stabbing, and was able to explain her alleged actions and present her own version of the facts. For these reasons, we find that the trial court properly allowed the State to introduce this other crimes evidence. This assignment presents no reversible error.

Assignment No. 4
By this assignment, defendant contends the trial court erred in refusing to allow her to question Deputy Wesley about investigative procedures. Deputy Wesley testified that he was not present at the scene on the night of the murder and took no part in the investigation, other than recording defendant's statement. Defense counsel, on cross examination, began questioning Deputy Wesley about typical homicide investigative procedures, including preservation of evidence and questioning witnesses at the scene. R. p. 941. The State objected to this line of questioning on relevancy grounds; the court sustained the objection. Defense counsel objected to the court's ruling.
A witness may be cross examined on any matter relevant to any issue in the case. La.C.E. art. 611 B. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.C.E. art. 401. All relevant evidence is generally admissible. La.C.E. art. 402. The trial judge has considerable discretion in determining the relevancy of evidence; the ruling will not be disturbed absent an abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981).
Defendant argues that Deputy Wesley's testimony regarding his investigative procedure at crime scenes is relevant because the state questioned Officers Means and Smith, who actually investigated the murder, about their investigative techniques. Clearly, however, the testimony of an officer who did not investigate the crime at issue, as to what his procedure would have been in a hypothetical crime scene investigation, is not relevant to the instant case. The trial court properly refused to allow the defendant to introduce this evidence. La.C.E. art. 402. We find no abuse of discretion.

Assignment Nos. 5 and 6
By these assignments, defendant argues that the trial court erred by not allowing Deputy Wesley to testify about prior complaints of violence he had received from the defendant involving the victim, and preventing the defendant from questioning him as to the full scope and nature of her videotaped statement. During defendant's videotaped statement, Deputy Wesley mentioned that he had received telephone calls from defendant about physical abuse by the victim; he did not describe the substance of the calls. At trial, defendant sought to introduce testimony about each of these incidents, first directly and then by reference to her videotaped statement. Deputy Wesley described one incident and indicated there were others before the State objected on hearsay grounds to what defendant told him in these telephone calls. The trial court sustained the objection and defendant objected to the court's ruling.
*1357 Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801 C. In the instant case, the defendant sought to elicit hearsay testimony from Deputy Wesley to prove that the victim abused her in the past and thus, lend credibility to her justification of self-defense. On appeal, the defendant contends that the statements are not hearsay because they form part of the res gestae of the instant offense. La.C.E. art. 801 D(4) provides that a statement is not hearsay if:
The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
The victim's alleged prior violent acts are far too remote from the occurrence to be considered as part of the res gestae of the killing. Moreover, the defendant was not prejudiced by the exclusion. She introduced the testimony of several people who witnessed the incidents of abuse that she sought to elicit from Deputy Wesley. These witnesses described the events in great detail. Defendant, herself, testified to the victim's past violent behavior toward her. Thus, the evidence which defendant is claiming the trial court excluded was admitted through other witnesses at trial. We find no error in the trial court's ruling. State v. Gantt, 616 So.2d 1300, 1307 (La.App. 2d Cir.), writ denied 623 So.2d 1302 (1993).
Defendant also asserts that La.R.S. 15:450, providing that confessions, admissions, or declarations sought to be used against her be played in their entirety, required the court to allow her to question Deputy Wesley about the full scope of her statement, including the substance of defendant's phone calls. The above provision simply requires that the court play the full statement so that the defendant may have the benefit of any exculpation or explanation that it may afford; it does not allow the introduction of otherwise inadmissible hearsay testimony explaining events related in defendant's statement. See State v. Clay, 441 So.2d 1227, 1234 (La.App. 1st Cir.), writ denied 446 So.2d 1213 (1983). Defendant's recorded statement was played in its entirety for the jury. Hence, this assignment presents no reversible error.

Assignment No. 7
Defendant urges that the trial court erred in not allowing Josephine Diarse to state the name she heard called out at the crime scene. Josephine Diarse was the victim's sister, and also a security guard for the West Lane Apartment complex on the night of November 28, 1992. She stated that she got a call about a disturbance in the complex parking lot, went outside, and saw the defendant surrounded by "a bunch of guys." R. p. 960. She testified that she heard a name called out. Defendant sought to elicit the name from her, but the State objected that it was hearsay; the trial court sustained the objection.
On appeal, defendant argues the statement is admissible as part of the res gestae; however, she provides no support for the contention. Neither the time frame nor context in which the name was called out is apparent from the record. It is unclear if the name was spoken by a "participant" in the "event" or whether the name in any way related to the "criminal act." La.C.E. 801 D(4). Furthermore, defendant was not prejudiced by the court's ruling. All eyewitnesses to the crime testified and defendant had ample opportunity to explore every possible version of the events through their testimony. We find no reversible error.

Assignment No. 9
By this assignment the defendant urges that during jury selection the State improperly used its peremptory challenges purposefully to exclude members of the defendant's race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and La.C.Cr.P. art. 795 C.
*1358 Under Batson, a peremptory challenge by the State cannot be based solely on the basis of the race of the prospective juror. A successful Batson argument requires the defendant to make a prima facie case of race-based exclusion, i.e., that the pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members of a cognizable racial group solely on the basis of race. State v. Collier, 553 So.2d 815, 818 (La.1989); State v. Tucker, 591 So.2d 1208, 1215 (La. App. 2d Cir.1991), writ denied 594 So.2d 1317 (1992). The defendant need no longer show that she is a member of this excluded class. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Once the defendant makes her prima facie showing, the burden shifts to the State to establish race-neutral reasons for its peremptory challenges. These reasons need not rise to the level of a challenge for cause, but must be more than the prosecutor's belief that a prospective juror would be biased because of his race. State v. Tucker, 591 So.2d at 1215. A neutral explanation must be clear, reasonably specific, legitimate and related to the case at bar. State v. Collier, 553 So.2d at 820. The trial court's findings as to purposeful discrimination depend largely on credibility evaluations and are therefore entitled to great deference by the reviewing court. Id., 553 So.2d at 818; Batson, 476 U.S. at 98, 106 S.Ct. at 1724 (note 21). In order to preserve the complaint that the prosecutor's use of a peremptory challenge was based on race, the defendant must make an objection before the entire jury panel is sworn. State v. Williams, 524 So.2d 746 (La.1988); State v. White, 535 So.2d 929 (La.App. 2d Cir.1988), writ denied 537 So.2d 1161 (1989).
In the instant case the jury venire contained 13 black prospective jurors. The defendant peremptorily challenged two of these; the State then used 11 of its 12 peremptory challenges to exclude every remaining prospective black juror. The jury ultimately selected contained only whites. Before the jury was sworn, the defendant raised an objection to the State's use of peremptory challenges. The trial court found she had made a prima facie case of purposeful discrimination, and this finding is not plainly wrong.
The court then properly requested the State to offer its race-neutral reasons for the challenges; the court accepted each of these. On appellate review, this court must analyze whether the reasons really were race-neutral, and whether the trial court properly assessed the weight and credibility of each explanation. State v. Collier, 553 So.2d at 822. Before reviewing the State's reasons, we observe that defendant's timely Batson objection did not come until all challenges had been exercised. Supp.R. p. 13. Many of the prosecutor's explanations were substantially accurate but contained errors. While we do not condone inaccuracy in the State's explanations, we will make some allowance for it when the explanation is required not promptly after the contested questioning, but hours or days later, compelling the prosecutor to give explanations from memory or from sketchy notes. The prosecutor offered the following explanations for its 11 peremptory challenges:
Ms. Goldsmith: The juror's youth; possible absence from portions of voir dire; she heard about the case "on the streets"; she knew or knew about the defendant; she was hesitant in answering; her body language suggested inattentiveness; and she described herself as a follower. With the exception of inattentiveness, which is never apparent from an impassive record, every one of the prosecutor's explanations is supported by the voir dire examination. Youthfulness (at age 21 Ms. Goldsmith was the youngest of the prospective jurors) and lack of attention are legitimate, race-neutral explanations. State v. Outley, 629 So.2d 1243, 1251 (La.App. 2d Cir.1993); State v. Collier, supra.
Ms. Colvin: Her son had recently been prosecuted; she had ill-will toward police officers; she had only recently moved to Grambling, and held a different standard of acceptable violence because she had lived in Detroit; she had prior jury service and was unemployed. The voir dire examination supports each of these reasons. Jurors with family members who have criminal records *1359 may be peremptorily challenged, as may those with a short length of residence in the community. State v. Otis, 586 So.2d 595 (La.App. 2d Cir.), writ granted on other grounds 589 So.2d 487, appeal after remand 592 So.2d 1 (La.App. 2d Cir.1991); State v. Johnson, 561 So.2d 922, 925 (La.App. 2d Cir.1990).
Ms. Franklin: She knew the victim, the defendant, the defendant's family and one of the witnesses; she had read about the case; she had prior service on a jury that rendered a not guilty verdict; she nodded at defense counsel but not at the prosecutor during voir dire. In fact, Ms. Franklin did not personally know either the victim (her husband used to work with him) or the defendant's mother; she had read about, but denied being familiar with the case. R. pp. 440-442; 467. The record does not indicate her body language during voir dire. However, her connection with prior criminal trials, especially one ending in acquittal, is a race-neutral explanation, as is nodding agreeably with defense counsel. State v. Johnson, supra.
Ms. Brown: She knew the victim, the defendant's family, witnesses, and attorneys; she had read about the case; the victim was a distant relative of hers and had worked for her sister. The record shows, however, that Ms. Brown did not know the defendant or her family. R. p. 522. Also, although she had read about the case, she denied having any opinion of it. R. p. 504. Knowledge of the victim can lead to partiality, and is a sufficient race-neutral explanation for the challenge. State v. Davis, 626 So.2d 800, 805 (La.App. 2d Cir.1993), writ denied 632 So.2d 762 (1994). Despite the prosecutor's misstatements, the challenge was properly sustained.
Ms. Green: She knew the defendant and her family, witnesses and attorneys; she had read about the case; she was diabetic, and had a job as a Mayor's assistant. While the record supports each of these explanations, we must observe that the one about "insulin dependence" is specious. Ms. Green testified that she required one injection each day, in the morning, and there is no indication that this would interfere with jury service. Standing alone, it would appear pretextual and would not support the peremptory challenge. However, her knowledge of the parties is clearly a sufficient, race-neutral reason for the challenge.
Ms. Nicholson: She knew the defendant; she knew about the case, having read about it in the paper and discussed it at work; she was young, and had a demeanor of sympathy for the defendant. The record shows she was 33 years old, and she implied that she might tend to vote not guilty because of the harshness of the penalty for second degree murder. R. p. 568. While the alleged youthfulness of a 33-year old is difficult to fathom (the State accepted a 24-year old white juror, Mr. Mall), knowledge of and partiality toward the defendant are legitimate, race-neutral reasons for the challenge.
Ms. Wortham: Her job as a teacher outside the parish might affect her judgment; as a teacher she might be sympathetic to the defendant's children; she knew about the case, showed a lack of commitment, and was young. The record only barely supports these reasons. At age 31, she was not extremely youthful; there was no record evidence that her job would influence her judgment; she testified she "saw a glimpse" about the case in the newspaper. However, she gave terse yes and no answers to voir dire questions; this, even from the impassive record, can support the prosecutor's assertion that Ms. Wortham lacked interest in the case and was perhaps not committed to jury service. This is a legitimate, race-neutral explanation. State v. Outley, supra.
Mr. Clemons: His father-in-law was an officer in the Grambling Police Department and he might be prejudiced against those officers, who might be witnesses at trial, because of the circumstances of his relative's separation from the Department; and he was young. Once again, an objection to the youthfulness of a 32-year old man is tenuous at best. Also, while his father-in-law had indeed retired from the Grambling Police Department, he did not state that the separation was on undesirable terms or that he himself held any ill feeling toward the *1360 police. However, connection with law enforcement may affect a juror's impartiality and is therefore a sufficiently race-neutral reason for a peremptory challenge. State v. Wilson, 25,775 (La.App. 2d Cir. 2/23/94), 632 So.2d 861.
Mr. Campbell: He knew the victim and defendant; he knew about the case; his harsh temper might incline him toward a manslaughter rather than a second degree murder verdict; his attitude toward killing might be influenced by his service in Vietnam; and he had an appearance pending before the court on a child support matter brought by the D.A.'s office. In fact, the extent of his familiarity with the parties was not really explored on voir dire, and there is no record evidence of any child support proceeding allegedly pending against him. Cf. State v. Powell, 598 So.2d 454, 462 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992). Mr. Campbell admitted, however, that he might need two hours for his blood to cool after a fight; his description of hand-to-hand combat in Vietnam supports the inference that he might be tolerant of violence. Although the question is close, we cannot say the trial court abused its discretion in accepting this explanation. State v. Collier, supra.
Mr. Hamilton: He knew the defendant and victim; he seemed irritated during voir dire; and he knew defense counsel. In fact, Mr. Hamilton described his knowledge of both defendant and victim as "passing"; the D.A. had done a title search for him some years ago; the record does not suggest any obvious attitude problem. All in all, the prosecutor's reasons are only barely supported by the record. However, the voir dire of Mr. Hamilton occurred on Monday, August 16th, and the explanation was not demanded until Thursday, August 19. This delay could, in part, explain the misstatement. Also, Mr. Hamilton's prior association with the D.A., while not stated by the prosecutor, is apparent from the record, and supports the challenge. State v. Rhone, 26,561, p. 9 (La.App. 2d Cir. 12/7/94), 646 So.2d 533. Finally, in the matter of the juror's alleged irritability, we must defer to the trial court, which has great discretion and is in a superior position to judge the juror's demeanor. State v. Collier, 553 So.2d at 822.
Ms. Kilgore: She was too young; she laughed after each question and appeared not serious; she knew about the case; she worked with the defendant's sister; she was unobservant, and agreed with defense counsel too readily. In fact, Ms. Kilgore could not remember what she had read about the case, and she denied having any impression of the defendant or her sister. While her lack of seriousness does not show in the impassive record, she did appear very friendly with defense counsel (R. pp. 625 et seq.), and in the matter of her demeanor we have no basis to disturb the trial court's credibility call. State v. Collier, supra.
In sum, while some of the prosecutor's explanations were incorrect, they were largely supported by the record on voir dire; other race-neutral explanations are apparent from the record. We are unable to find that the trial court abused its discretion in accepting the explanations. State v. Collier, supra; State v. Tucker, supra. Further, they were sufficiently race-neutral, based on the jurisprudence discussed above. The trial court did not err in accepting these explanations, and Ms. Mamon's assignment does not present reversible error.

Error Patent
On review for error patent we find that the trial court failed to inform defendant of the prescriptive period for seeking post conviction relief under La.C.Cr.P. art. 930.8. This error, however, is not grounds for reversal. La.C.Cr.P. art. 921. The trial court is directed to give defendant written notice of the prescriptive period for applying for PCR within 10 days of the rendition of this opinion and to file defendant's receipt of such notice in the record of the proceedings. State v. Powell, supra, 598 So.2d at 471-472.
We find nothing else we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed, Annie Mamon's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] We note that defendant has made no attempt to argue on appeal that the jury erred in finding her guilty of second degree murder rather than manslaughter. It is apparent on this record that the defense did not seriously attempt to advance the theory at trial; little evidence was introduced and defense counsel in closing stated he did not want a compromise verdict. "Sudden passion" and "heat of blood" immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection are not elements of manslaughter, but rather mitigatory factors in the nature of a defense; defendant has not attempted to show these factors by a preponderance. State v. Lombard, 486 So.2d 106 (La. 1986); State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.), writs denied 508 So.2d 64, 65 (1987); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993).
[2] The remaining unbriefed assignments of error are considered abandoned. U.R.C.A. Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La.1982).
[3] Defense counsel told the jury:

Well you may wanna ask yourself why did shewhy did she stay with someone like that that long that was brutalizing her? I guess if I could answer that question, if anyone of you could answer that question, we would not have an area of law that dealt with battered women syndrome. R. pp. 399-400.
[4] At one point during cross examination, defense counsel approached Dr. McCormick with physical evidence, a knife. Dr. McCormick stated, "You feel okay handing me this knife now? You're a brave man." He also demonstrated a mock stab on defense counsel. The record reflects this action as well as the jury's laughter. R. p. 888.