778 So.2d 706 (2001)
STATE of Louisiana, Appellee,
v.
Lamont JOHNSON, Appellant.
No. 34,009-KA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2001.
*708 Peter J. Black, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Donald B. Dorris, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, STEWART and DREW, JJ.
WILLIAMS, Judge.
The defendant, Lamont Johnson, was charged by grand jury indictment with two counts of aggravated rape, violations of LSA-R.S. 14:42. After a jury trial, the defendant was found guilty as charged. The defendant's motion for post-verdict judgment of acquittal was denied. The trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence on each count and ordered that the sentences be served consecutively. The defendant appeals. For the following reasons, we affirm.

FACTS
On October 10, 1998 at approximately 4:00 a.m., an armed individual, who was later identified as the defendant, kicked in *709 the front door of the home of Trichelle Smith, Kina Watkins, and Carla Brown. Smith, Watkins and her two small children were the only persons present in the house, since Carla Brown was at work. After breaking into the residence, the defendant bound and blindfolded both Watkins and Smith, and placed them in different rooms. The defendant poured baby oil on each woman's vaginal area, and then repeatedly raped both women at gunpoint. After his attacks on the women, the defendant forced each one to use a feminine douche. Next, the defendant forced Watkins to sit with him on the couch as he slept. When Carla Brown returned home from work shortly after 7:00 a.m., she observed defendant sleeping and pointing a gun towards a bound Watkins. Carla left the residence to telephone the police.
When a Shreveport police officer arrived at the scene, the defendant fled from the house through a back bedroom window, leaving his vehicle in the driveway. While police were still at the scene, this vehicle was reported stolen. Police contacted the vehicle's registered owner, who stated that defendant was the primary driver. Later that day, June Mandigo informed police that at approximately 7:30 a.m. the defendant, who was her ex-husband's son, had come to her residence, which was located a short distance from the crime scene. She stated that the defendant had changed clothes and used the telephone. The victims gave statements that they had been raped and they identified the defendant as their assailant from a photographic line-up. Based on the foregoing information, an arrest warrant was obtained for defendant, who later surrendered himself to the police. After his arrest, the defendant gave a statement in which he described two versions of the incident. Initially, defendant stated that he had driven an unknown individual in his vehicle to the house, but he did not enter. Later, the defendant admitted that he had entered the residence to rob the victims of money and drugs, but that he did not commit the rapes.
The defendant was charged with two counts of aggravated rape. After a jury trial, the defendant was found guilty as charged. The trial court denied defendant's motion for post-verdict judgment of acquittal and imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence on each count and ordered that the sentences be served consecutively. The defendant now appeals.

DISCUSSION
The defendant contends the trial court erred in denying his motion to dismiss counsel without conducting a meaningful hearing on the defense attorney's alleged failure to consult with his client. Defendant argues that he was effectively denied his constitutional right to present a defense by the court's lack of inquiry into defendant's allegations that his appointed attorney's failure to communicate had deprived him of effective assistance of counsel.
An accused is entitled to present a defense. La. Const. art. I, § 16 (1974). A defendant's right to the assistance of counsel is basic to our legal system and is guaranteed by both federal and state law. U.S. Const. Amend. VI; La. Const. art. I, § 13 (1974); LSA-C.Cr.P. art. 511. However, that right cannot be manipulated to obstruct the orderly procedure of the courts or to thwart the administration of justice. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Harper, 381 So.2d 468 (La. 1980). Absent evidence that an attorney is incompetent, unprepared, or burdened with a conflict of interest, a trial court has no duty to grant a defendant new counsel. Harper, supra. In order to prove counsel was ineffective, a defendant must show that counsel's performance was deficient, and that this deficiency prejudiced the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 *710 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
In the present case, defendant's motion to dismiss counsel alleged that he was being denied his constitutional right to effective assistance of counsel due in part to his attorney's failure to meet with defendant personally at the parish jail to discuss matters concerning his pending trial. At a September 20, 1999 pretrial hearing on the motion to dismiss counsel, the trial court stated it had reviewed defendant's motion and asked if he wanted to say anything further. The defendant complained that his attorney had not come to see him and expressed dissatisfaction because he was not provided personal copies of discovery documents and that he did not know exactly what was taking place in his case.
The trial court stated that it had reviewed the case record and noted that defense counsel, David McClatchey, had filed motions for bond reduction, bill of particulars, preliminary exam, discovery and production of documents. During this hearing, the trial judge did not ask defense counsel if he had visited the defendant, but expressed his belief that McClatchey had done an excellent job with other cases. McClatchey did not comment on the record concerning whether he had visited the defendant at the jail. Regarding defendant's request for copies of documents filed in his case, defense counsel informed the court that the policy of the indigent defenders office was not to provide clients with discovery material because of the caseload and expense. The trial court ordered defense counsel to provide defendant with a copy of any pleadings filed on his behalf and a copy of the State's discovery response.
On October 11, 1999, the trial date, the defendant again complained that defense counsel had not come to see him and did not inform him about trial tactics. The defendant stated that his attorney's representation was not "sufficient." In response, the trial judge stated that he believed McClatchey had represented the defendant in a "fine fashion" and had raised every issue that he ought to have pursued. The following day, defendant repeated his objection to the effectiveness of his attorney's representation. The trial court then asked defense counsel if he had talked with his client. McClatchey responded as follows:
Your Honor, what he is saying, I believe is, that I haven't come out to the jail and talked to him. I don't recall if I have actually driven out to the jail and talked to him. I have talked to him numerous times when he has been at the courthouse. I've got an arrangement that I don't like to publicize with the deputies, I call out there and they'll go get the person and put them on the telephone.
Finally, on October 13, 1999, the trial judge, in an attempt to clear the record, stated:
Mr. McClatchey has had contact with this defendant in court. Mr. McClatchey has talked on the telephone numerous times to this defendant. He told me that. He said it in court yesterday. We had a conference meeting yesterday shortly after court. When Mr. Johnson stands up and says, there has been no contact, I have not had the opportunity to talk to my lawyer, that isn't true. Mr. McClatchey has indicated that there has been ... contact by telephone. I know there ha[ve] been numerous occasions when this case has been set for trial over the one year that it has been pending. As an officer of the Court, Mr. McClatchey has an affirmative duty to convey to me the truth of this issue.... I know Mr. McClatchey has had contact with this client and other clients numerous times.
Contrary to defendant's contention, the record demonstrates that in a pretrial hearing and at trial, the district court heard defendant express his complaints about his attorney several times and the court meaningfully addressed the *711 allegations contained in the motion to dismiss counsel. Thus, the trial court's proceedings did not deprive defendant of his right to present a defense or to due process. Although defendant was not satisfied with the level of communication or the frequency of personal visits with his attorney, based upon this record, we cannot say the trial court was clearly wrong in finding that defense counsel maintained adequate contact with this defendant.
Nor did the defendant present evidence that his attorney was incompetent or unprepared. In his brief to this court, defendant argues that his attorney's decision to waive an opening statement reflected a lack of strategy based on the asserted failure of defense counsel to confer with his client. However, we note that during argument regarding his motion for a continuance to obtain an expert, defense counsel expressed concern about making a representation in his opening statement to the jury that would not be supported by subsequent medical evidence. Thus, counsel's waiver of an opening statement was a tactical decision which does not necessarily demonstrate a lack of trial strategy. Defendant's argument lacks merit.
Even if we were to assume arguendo that defense counsel's assistance was deficient, defendant has failed to show that but for such a deficiency, there is a reasonable probability that the outcome of the trial would have been different. See Strickland, supra. Consequently, the trial court did not err in denying defendant's motion to dismiss counsel. The assignment of error lacks merit.

Sufficiency of the Evidence
The defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal. Defendant argues that the state failed to produce sufficient evidence to prove that he committed the offense of aggravated rape.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
LSA-C.Cr.P. art. 821 provides that a post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. Article 821 manifests the intent to adopt the standard of Jackson v. Virginia as the proper degree of deference which both trial and appellate courts owe to the jury's verdict. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
LSA-R.S. 14:41 defines rape as the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent, and any sexual penetration, however slight, is sufficient to complete the crime. The offense of aggravated rape is a rape that is committed under any of the following circumstances: (1) The victim resisted to the utmost but the resistance was overcome by force; (2) the victim was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution; (3) the victim was prevented from resisting because the offender was *712 armed with a dangerous weapon; (4) the victim was under the age of 12; (5) two or more offenders participated in the act. LSA-R.S. 14:42; State v. Johnson, 94-0236 (La.App. 4th Cir.3/16/95), 652 So.2d 1061, writ denied, 95-1752 (La.2/21/97), 688 So.2d 524.
In the present case, both victims identified defendant as the individual who kicked in their front door armed with a gun, forced them from their bedrooms into the living room and covered their heads with a blanket. Each woman stated that defendant blindfolded them and tied their hands before placing them in separate rooms. Smith testified that the defendant removed her pants and underwear, poured baby oil over her bottom and performed sexual intercourse, raping her five separate times. Smith stated that after one episode, the defendant used a towel to wipe his semen off of her body. When specifically asked whether defendant had performed vaginal intercourse with her, Smith answered yes.
Watkins, who was seven-months pregnant at the time of the attack, testified that she remained quiet to keep from startling her two small children who were asleep in the room. Watkins stated that defendant poured baby oil on her buttocks and raped her twice. He threatened to kill her if she told anyone. Following the attacks, defendant brought Watkins into the living room and forced her to sit with him on the couch, where he fell asleep pointing a gun at her ribs. By this time, Watkins' duct tape blindfold had loosened so that she was able to observe the defendant and later identify the Old Navy T-shirt and white tennis shoes he wore.
Dr. Randy Davis testified that he had examined both women at LSU Medical Center. He stated that both women were upset, crying, and distraught and that the women told him that they had been raped repeatedly. Dr. Davis testified that both Smith and Watkins reported that they had been penetrated vaginally by the assailant's penis. Davis stated that the fact that sperm was not found in the vaginal pool was consistent with the women's report of having used a douche. Dr. Davis also testified that he would not necessarily expect to find genital trauma with a rape victim, particularly when a lubricant, such as baby oil, had been used.
The state introduced into evidence positive DNA test results showing that the defendant's genetic material was present in the sperm sample taken from the towel recovered from the crime scene. The lab analysis indicated that the probability of another individual having the identical combination of genetic markers as the defendant was 1 in 1.17 trillion.
Defendant contends the state failed to prove commission of an act of vaginal intercourse, an element of the offense charged, because neither victim specifically stated that she was sexually penetrated and there was no evidence of physical trauma. However, as previously noted, Dr. Davis testified that each woman specifically informed him that she had been penetrated vaginally by her attacker, and he opined that rape would not necessarily cause trauma. In addition, Smith responded at trial that the defendant had committed vaginal intercourse upon her and Watkins testified she was positive that she had been penetrated by her assailant. Thus, defendant's contention lacks merit.
The jury heard the testimony and weighed the credibility of the witnesses. Based upon this record, the jury could reasonably have found that defendant was the individual who sexually attacked each victim multiple times using the threat of deadly force while armed with a handgun. Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational juror could have found that with respect to each victim, the essential elements of the crime of aggravated rape were proven beyond a reasonable doubt. Therefore, the trial court did not err in denying the defendant's motion for post-verdict *713 judgment of acquittal. The assignment of error lacks merit.

Motion for Continuance
The defendant contends the trial court erred in denying his motion for a continuance. Defendant argues that the state failed to timely disclose the victims' medical records and thereby precluded him from obtaining the assistance of an expert witness.
The prosecution has a duty to disclose all evidence which is "material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is material when there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating witness testimony, or assisting impeachment or rebuttal. U.S. v. Lloyd, 992 F.2d 348 (D.C.Cir.1993). The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court. Denial of the motion will not be disturbed on appeal absent an abuse of discretion and a showing of specific prejudice. LSA-C.Cr.P. art. 712; State v. Knighton, 436 So.2d 1141 (La. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Ashley, 569 So.2d 276 (La.App. 2d Cir.1990), writ denied, 575 So.2d 387 (La.1991).
In the present case, the defendant made an oral pro se motion seeking to obtain the medical records of the victims. Defense counsel requested that the trial court inspect the records to determine if they contained any exculpatory Brady material. The trial judge performed an in camera inspection of the medical records and found that they did not contain any Brady material and were not subject to discovery by defendant. However, after a jury was selected, the state turned over the medical records to defendant after deciding to call Dr. Randy Davis, the treating physician, as a witness. The state's decision was apparently in response to defense counsel's remarks during voir dire that proof of sexual penetration would be an issue at trial.
Upon receipt of the medical records, the defendant's attorney moved for a continuance, protesting that the records contained numerous scientific notations which he did not understand and which required clarification. After the court denied a continuance, defendant's attorney moved for a mistrial based on his inability to effectively assist his client under the circumstances. At that point, to address defense counsel's concerns about not being able to understand the medical records, the judge granted a 24-hour recess during which the state was ordered to allow the defense to question Dr. Davis, who had prepared the medical report.
The trial judge telephoned defense counsel during the recess to find out if the meeting with the doctor had satisfied defense counsel's concerns. The court offered to issue an instanter subpoena to obtain another expert if the defense so required, but counsel declined the offer. In fact, counsel apparently informed the judge that Dr. Davis had addressed the defense questions about the contents of the medical records. Despite this representation, the following day the defendant filed a written motion for continuance seeking more time in which to retain a medical expert. After noting his previous conference with defense counsel, the judge denied the continuance.
The jury heard the evidence based upon the victims' medical examinations, which indicated the lack of physical trauma and the absence of seminal fluid. The jury was able to consider the competing views as to the meaning of the medical evidence. After reviewing the record and considering the steps taken by the trial court to give defendant time to review the medical records and to assist the defense in obtaining an expert, we conclude that the defendant has failed to demonstrate that he was prejudiced by the court's denial of his motion for continuance. The assignment of error lacks merit.

*714 Expert Witness

The defendant contends the trial court erred in allowing Dr. Davis to testify as an expert witness in the field of obstetrics and gynecology. Defendant argues that the doctor's experience in performing "rape-kit" examinations did not qualify him to give expert testimony on the issue of penetration.
The trial court is vested with wide discretion in determining the competence of an expert witness, and its ruling on the qualification of the witness will not be disturbed absent an abuse of discretion. State v. Trahan, 576 So.2d 1 (La.1990). An expert is one who, by education or experience, has a unique knowledge of the subject matter at issue and is permitted to express personal opinions. Barrett v. T.L. James & Co., 28,170 (La.App.2d Cir.4/3/96), 671 So.2d 1186, writ denied, 96-1124 (La.6/7/96), 674 So.2d 973.
Defendant objects that Dr. Davis was not qualified to testify as an expert in the field of gynecology because he was still a resident at LSUMC, could not open his own gynecology clinic, and had not been published in any journals. The record shows that Dr. Davis is a medical doctor licensed to practice medicine in this state, with specific experience in performing thirty to fifty physical examinations of rape victims. In his brief, defendant contends that the doctor's testimony was highly prejudicial because the expert opinion addressed defendant's legal theory that he did not rape the victims. However, contrary to defendant's contention, Dr. Davis did not give an opinion as to who raped the victims.
Rather, he testified that in his experience, a woman who has been raped will not necessarily exhibit signs of vaginal trauma. Based on the evidence presented, we cannot say the trial court was clearly wrong in finding that the doctor's medical training and specialized knowledge in the field of obstetrics and gynecology would assist the jury. Consequently, the trial court did not abuse its discretion in accepting Dr. Davis as an expert. The assignment of error lacks merit.

Defendant's Presence at Proceedings
The defendant contends the trial court erred in conducting conferences during trial when he was not present. Defendant argues that the court violated his right to be present at all stages of the proceedings because he did not participate in two bench conferences or in a court telephone conference with defense counsel.
LSA-C.Cr.P. art. 831 provides in relevant part:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
The presence of the defendant is a condition of due process only to the extent that a fair and just hearing would be thwarted by his absence. State v. Kahey, 436 So.2d 475 (La.1983). In certain instances, the presence of defense counsel may be sufficient to satisfy the statutory requirement of presence of the defendant at important stages of a trial. State v. Lane, 414 So.2d 1223 (La.1982); State v. Grissom, 448 So.2d 757 (La.App. 2d Cir. *715 1984); State v. Smith, 587 So.2d 62 (La. App. 4th Cir.1991). The right to be present may be waived by defendant or his attorney, or by the defendant's voluntary absence or his failure to assert an objection to a discussion held in his absence. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Kahey, supra; State v. Lane, supra.
In felony cases, the clerk of court or court stenographer shall record all proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel. LSA-C.Cr.P. art. 843; State v. Ford, 338 So.2d 107 (La.1976); State v. Mamon, 26,337 (La.App.2d Cir. 12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.6/2/95), 654 So.2d 1104. To effectuate the guarantee of an appeal in felony cases, a complete record is needed for proper support and review of assigned errors. However, an omission from the record which is immaterial to a proper review on appeal does not require reversal of a conviction. Mamon, supra; State v. Johnson, 438 So.2d 1091 (La.1983).
Here, defendant complains that he should have been included in two bench conferences where discussion was held off the record. There is no jurisprudence or specific statutory provision which requires the defendant's presence at a bench conference in order to satisfy the requirement of Article 831. State v. Wesley, 33,402 (La.App.2d Cir.5/10/00), 759 So.2d 286. We note that although defendant did not directly participate in the bench conferences, he was present in the courtroom during those discussions.
We also find that the telephone conference between the trial judge and defense counsel did not involve a ruling on the admissibility of evidence, but addressed the question of whether defense counsel had spoken with Dr. Davis and whether the defense would require assistance in obtaining an expert witness. Thus, the provisions of Article 831 were not applicable to the phone conference. In any event, at court the next day, the judge described the contents of his conversation with defense counsel on the record in the defendant's presence.
After reviewing the record, we conclude that the participation of the defendant's attorney during the bench conferences and telephone discussion, and defendant's presence in the courtroom when the conferences and the judge's comments occurred, provided sufficient protection of defendant's constitutional rights as required by Article 831. Consequently, the trial court did not deny the defendant the opportunity to be present at all stages of the proceedings. The assignment of error lacks merit.

Error Patent Review
Defendant requests that this court review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. Pursuant to LSA-C.Cr.P. art. 920(2), we have reviewed the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.