761 So.2d 498 (2000)
STATE of Louisiana
v.
Coby MYERS.
No. 99-K-1803.
Supreme Court of Louisiana.
April 11, 2000.
Rehearing Denied May 12, 2000.
*499 Katherine M. Franks, Abita Springs, Counsel for Applicant.
Richard P. Ieyoub, Atty. Gen., Paul D. Connick, Jr., Dist. Atty., Richard C. Bates, Baton Rouge, Terry Michael Boudreaux, Gretna, Michael Scott Futrell, Pollock, Ellen Steman Fantaci, Metairie, Counsel for Respondent.
KIMBALL, Justice.[*]
On July 16, 1997, a jury convicted defendant, Coby Myers, of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2. The trial judge subsequently sentenced defendant, as a second felony offender, to twelve (12) years at hard labor. Defendant raises only the issue of whether the prosecutor used his peremptory challenges to exclude African-Americans[1] from the jury solely on the basis of their race in violation of the Fourteenth Amendment as interpreted in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After a review of the record and the applicable law, we hold the trial judge erred in not addressing defense counsel's Batson objections and this error raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venirepersons. Thus, defendant's conviction is reversed and the case remanded to the trial court for a new trial.

FACTS AND PROCEDURAL HISTORY
On June 28, 1996, Sergeant Wayne Kron of the Jefferson Parish Sheriff's Office was dispatched to 2504 Arizona Street, Marrero, Louisiana, in response to a silent burglar alarm. When he arrived at the residence, he heard a disturbance at the front of the house and saw two black males running across the lawn. At trial, Sergeant Kron testified he ordered the two males to stop and, in response, the two stopped briefly, smiled directly at him, and continued to run. Sergeant Kron was unable to apprehend them. Approximately ten days later, Sergeant Kron identified Coby Myers from a photographic lineup as one of the two men he had seen running away from 2504 Arizona Street. Based on this identification, defendant was arrested and charged with the crime of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2.
On July 15, 1997, a twelve-person jury was empaneled. One day later, after deliberating on the evidence presented, the jury returned a verdict of guilty as charged and the trial judge sentenced defendant to ten (10) years at hard labor. The State then filed a multiple offender bill of information alleging defendant was a second felony offender. On November 12, 1997, the trial court vacated defendant's prior sentence and sentenced him to twelve (12) years at hard labor as a habitual offender.
Defendant appealed alleging, among other assignments of error, that the trial judge erred in not sustaining the defense objection to the prosecutor's use of peremptory challenges to exclude six black jurors on the basis of race and in not requesting race-neutral reasons for excluding these jurors. The Fifth Circuit Court of Appeal, relying on State v. Green, 94-0887 *500 (La.5/22/95), 655 So.2d 272, affirmed the conviction holding defendant failed to make a prima facie case of purposeful discrimination because "[t]here is no proof in the record that the rejection of [the] six potential jurors was in any way predicated upon race." State v. Myers, 98-899, p. 6 (La.App. 5 Cir. 5/19/99), 737 So.2d 255, 259. Thus, defendant's Batson challenge automatically failed and the State was not required to give race-neutral reasons for excluding the six black jurors during voir dire. Id.
We granted certiorari to determine the sole issue of whether the court of appeal erred in determining the State was not required to give race-neutral reasons for exercising peremptory challenges against six of seven African-American jurors because defendant failed to establish a prima facie case of purposeful discrimination by the State as required by Batson. State v. Myers, 99-1803 (La.11/24/99), 749 So.2d 685.

LAW AND DISCUSSION
In his only assignment of error, defendant argues that the State used peremptory strikes to exclude six black potential jurors from the venire in a discriminatory manner in violation of the Fourteenth Amendment's Equal Protection Clause. The record shows that the first panel of jurors called for voir dire contained three black venire members. One black juror was selected and the State used two peremptory challenges to exclude the other two. At the end of the first panel selection, defense counsel and the prosecutor entered into the following exchange:
Defense: I would request that the State give reasons for cutting those people. There's nothing apparently wrong with either of them.
State: Where's the prima facie case exclusion based on race, Mark? Show me the prima facie case.
Defense: Well, we're dealing right now with a case that allows a jury to come back with only ten of twelve challenges and you have sat one and ... it might be early or premature, and I will just note an objection.
The Court: Alright, you've indicated your objection. You've used five and he has used three.
The second panel of jurors called for voir dire contained two black venire members both of whom were excused by the prosecution with peremptory challenges. At this point, defense counsel stated "For the record ... we are really getting very close to having [a prima facie case] ... I think we are beyond that point." The court continued with the jury selection without responding to defense counsel's objection. Finally, after the third panel of prospective jurors was examined, the State again excluded two black venire-persons, bringing its total to six African-Americans excused peremptorily, and defense counsel made the following objection:
Defense: I would re-urge at this point in time that every black, except the first one, has been cut and I would request that reasons be giventhat at this point we do have what seems to be the series here that appears to be some sort of intent by the State to keep minorities off the panel.
The Court: What's the next one? (calling for the name of the next venire-person)
Thus, again, in response to defense counsel's objection, the court simply continued with jury selection. The court neither ruled on defendant's establishment of a prima facie case, nor did it require the prosecutor to provide race-neutral reasons for its strikes. Only one black juror was on the jury ultimately empaneled.
Both in this state and throughout the nation, the law is firmly settled that peremptory strikes may not be based on race in either criminal or civil cases. See *501 Batson v. Kentucky, 476 U.S. at 89, 106 S.Ct. at 1719 (dealing with prosecutor's strikes); Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (dealing with defense strikes in criminal trials); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 631, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (dealing with civil trials); State v. Collier, 553 So.2d 815, 817 (La.1989) (holding that un-rebutted prima facie case requires reversal; La. C. Cr. P. art. 795(c)). If it appears that one party is using its peremptory strikes in a discriminatory manner, the other party may raise the issue by making what has come to be known as a Batson objection.
In Batson, the United States Supreme Court established a three-part framework to be employed in evaluating an equal protection challenge to a prosecutor's use of a peremptory strike. First, the defendant must make a prima facie showing of discrimination in the prosecutor's use of the strike. If he fulfills this requirement, then the prosecutor must offer a race-neutral explanation for the challenge. This is a burden of production, not one of persuasion. Then, the trial court must decide whether the defendant has carried the ultimate burden of proving that the strike constituted purposeful discrimination on the basis of race. See Batson, 476 U.S. at 89, 106 S.Ct. at 1719; Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
The combination of factors needed to establish a prima facie case are: (1) the defendant must demonstrate that the prosecutor's challenge was directed at a member of a cognizable group; (2) the defendant must then show the challenge was peremptory rather than for cause (i.e., "peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate' "); and (3) finally, the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venireperson on account of race. Batson, 476 U.S. at 96, 106 S.Ct. at 1723.
In Green, 655 So.2d at 287-88, this court held that the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes and outlined several factors that could lead to a finding that a prima facie case has been made pursuant to Batson:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. See State v. Collier, 553 So.2d 815 (La.1989); State v. Thompson, 516 So.2d 349 (La. 1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), re'hg denied, 488 U.S. 976, 109 S.Ct. 517, 102 L.Ed.2d 551 (1988).
If the defendant fails to make out a prima facie case, then the Batson challenge fails and it is not necessary for the prosecutor to articulate race-neutral explanations for the strikes. Green, 655 So.2d at 287-88.
The focus in this case is whether defendant presented a prima facie case of discrimination that required the prosecutor to respond with race-neutral reasons for the strikes. Batson makes clear that the proof of a prima facie case is necessarily fact-intensive. The United States Supreme Court did not detail what constitutes a prima facie showing but stated:
For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or *502 refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning a prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
The State contends that because the trial court ignored defense counsel's requests for race-neutral reasons for its use of peremptory challenges on black jurors, the judge "tacitly ruled that the defendant did not prove a prima facie case of racial discrimination." However, the record in this case does not support or explain the judge's dismissive attitude toward defense counsel's repeated requests for race-neutral reasons. Not only did the trial judge fail to articulate a reason for his refusal to require the State to produce race-neutral explanations, he never used the words "prima facie" nor did he rule on any of defendant's objections. From the record, it appears the trial judge simply ignored any claim of a Batson violation.
In Batson the United States Supreme Court stated that its decision to require trial courts to be sensitive to the racially discriminatory use of peremptory challenges enforces the mandate of equal protection and furthers the ends of justice. Batson, 476 U.S. at 99, 106 S.Ct. at 1724. Further, ensuring that no citizen is disqualified from jury service because of his or her race increases public respect for the justice system and the rule of law. Id. Thus, the issue of purposeful racial discrimination in the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole. The trial judge observes firsthand the demeanor of the attorneys and venirepersons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold record. Thus, when a Batson challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes. See Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866 (once race-neutral reasons for peremptory strikes have been given, the issue of whether a prima facie case of discriminatory intent has been made is moot).
In this case, the defense counsel put the trial court on notice that he questioned the peremptory strikes being made by the State. Although arguably somewhat inarticulate, defense counsel made the nature of his objection clear enough for the trial court and prosecutor to respond if they had been so inclined. Whether the pattern of strikes in this case was enough to establish a prima facie showing of discriminatory intent should have been addressed initially by the trial judge. Yet, instead of addressing this serious, substantive objection, the trial court continued with jury selection as if no Batson challenge had been made. The trial judge's rulings and observations are integral to a review of a Batson challenge because of his or her unique role in the dynamics of a voir dire. In this case, we have no rulings or observations from the trial judge to review. This failing on the part of the trial court raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venirepersons. In this case, the specter of racial discriminatory intent was raised, which cannot be discounted from a record where the trial judge failed to rule on the objections.
Unfortunately, the trial judge in this case has recently passed away. Thus, we need not address the issue of whether the case should be remanded for a hearing on the issue of defendant's showing of a prima facie case of discriminatory intent as, without the presence and participation of the *503 trial judge, a meaningful hearing on the issue is all but impossible. Instead, we must, in this case, reverse the defendant's conviction and remand this matter to the trial court for a new trial.

CONCLUSION
For the foregoing reasons, we hold the trial judge erred in not addressing defense counsel's Batson objections and this error raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venirepersons. Thus, defendant's conviction is reversed and the case remanded to the trial court for a new trial.
REVERSED AND REMANDED.
NOTES
[*] Calogero, C.J., not on panel. See Rule IV, Part 2, § 3.
[1] The terms "African-American" and "Black" are used interchangeably throughout this opinion.