786 So.2d 771 (2001)
STATE of Louisiana,
v.
Robert E. BOURGEOIS, Sr.
No. 00-KA-1353.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*772 Frank Sloan, Louisiana Appellate Project, Covington, LA, Attorney for Appellant Robert E. Bourgeois, Sr.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, Churita H. Hansell, Counsel of Record on Appeal, Terry M. Boudreaux, Appellate Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges CANNELLA, McMANUS and ROTHSCHILD.
CANNELLA, Judge.
Defendant, Robert Bourgeois, appeals from his convictions of aggravated rape of a female juvenile under 12 years of age, aggravated oral sexual battery and aggravated incest of a female juvenile under 12 years of age and his sentences to life, 15 years and 15 years, respectively, imprisonment at hard labor to run concurrently. For the reasons which follow, Defendant's convictions and sentences are affirmed in part and the case is remanded in part for further proceedings.
Between January of 1993 and November of 1996, the Defendant sexually molested his great-granddaughter who was between the ages of nine and 12. The sexual acts occurred while the Defendant babysat the victim in the victim's home. Over the three year period, the Defendant frenchkissed, fondled, performed oral sex on the victim, and showed the victim pornographic videotapes. In addition, the Defendant *773 had the victim perform oral sex on him. The Defendant attempted intercourse with the victim several times, but stopped when she cried out in pain. The victim reported the sexual abuse to her mother who called the police. The Defendant subsequently gave a confession and was arrested.
The Defendant was indicted by a grand jury and charged with aggravated rape of a female juvenile under 12 years of age, aggravated oral sexual battery and aggravated incest of a female juvenile under 12 years of age, in violation of La. R.S. 14:42, 14:43.4 and 14:78.1 respectively. The Defendant pled not guilty to all three charges and proceeded to trial.
After a two day trial on November 17 and 18, 1999, the Defendant was unanimously found guilty as charged on all three counts by a 12 person jury. He was subsequently sentenced to life imprisonment at hard labor on the aggravated rape conviction and to 15 years imprisonment at hard labor each on the aggravated oral sexual battery and aggravated incest convictions, to run concurrent with his life sentence.[1]
The Defendant filed a written motion for appeal on February 17, 2000. While the Defendant's appeal may have been premature, this procedural defect was cured by his March 2, 2000 sentencing. See, State v. Bagemehl, 98-1134 (La.App. 5th Cir.5/19/99), 737 So.2d 228. It is from these three convictions and sentences that the Defendant appeals, assigning one error.

ASSIGNMENT OF ERROR NUMBER ONE
In his sole assignment of error the Defendant argues that the trial court erred in denying his J.E.B. objections.[2] In particular, he argues that the State impermissibly used its peremptory challenges to exclude males from the jury by using six of seven peremptory challenges on prospective male jurors. The Defendant further contends that, despite his J.E.B. objections and a prima facie showing of purposeful gender discrimination, the trial court erred by not requiring the State to give gender neutral reasons for the use of those peremptory challenges. The record supports the Defendant's claim.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause prohibits the use of peremptory strikes to challenge a potential juror solely based on his or her race or on the assumption that members of a certain race will be unable to impartially consider the case before them. The Court concluded that such discriminatory practices in the use of peremptory challenges *774 denies a defendant equal protection of the law and unconstitutionally discriminates against the potential juror in violation of the Fourteenth Amendment. In J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended Batson and held that the Equal Protection Clause also prohibits discrimination in jury selection on the basis of gender.
The Supreme Court has set forth a three-step analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner that violates the Equal Protection Clause: (1) the party objecting to the peremptory strike must make a prima facie showing of discrimination,(2) if the requisite showing has been made, the burden shifts to the opposing party to articulate a gender or race-neutral explanation for striking the jurors in question, and then (3) the trial court must determine whether the party objecting to the strike carried his burden of proving purposeful discrimination. Batson, supra; Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); State v. Green, 94-887 (La.5/22/95), 655 So.2d 272, 287. Regardless of whether the challenge is gender-based or race-based, the challenging party bears the initial burden of establishing a prima facie case of the State's discriminatory use of a peremptory strike. J.E.B. v. Alabama ex rel., 511 U.S. at 145, 114 S.Ct. at 1429-1430; Batson v. Kentucky, 476 U.S. at 96-97, 106 S.Ct. at 1722-1723; State v. Bourque, 96-842 (La.7/1/97), 699 So.2d 1, 7, cert. denied, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998).
Thus, the first question is whether the Defendant made a prima facie showing that the State used its peremptory challenges to discriminate against prospective jurors on the basis of their gender. If the Defendant failed to do so, the J.E.B. challenge fails and it is not necessary for the prosecutor to articulate gender-neutral explanations for his strikes. State v. Green, 94-887 (La.5/22/95), 655 So.2d 272, 287-288.
The combination of factors needed to establish a prima facie case are: (1) the defendant must demonstrate that the prosecutor's challenge was directed at a member of a cognizable group; (2) the defendant must then show that the challenge was peremptory rather than for cause; and (3) finally the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of being a member of the cognizable group. Batson, 476 U.S. at 96, 106 S.Ct. at 1723. Relevant facts or circumstantial evidence of discriminatory intent include proof of disparate impact, a pattern of strikes against jurors, as well as questions and statements made by the prosecutor during voir dire. State v. Givens, 99-3518 (La.01/17/01), 776 So.2d 443.
In State v. Green, supra at 288, the Louisiana Supreme Court discussed how the Defendant may establish his prima facie case:
The Defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of *775 purposeful discrimination. (Emphasis provided.)
It is not enough that a discriminatory result be evidenced, but rather that result must be traced to a discriminatory purpose. The sole focus of the inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. State v. Green, supra.
The Defendant contends that he met his burden of showing a prima facie case of purposeful gender discrimination based on the State's pattern of peremptory strikes against prospective male jurors combined with the statement made by the prosecutor that he intended to exclude males from the jury.
The transcript of the voir dire evidences that the Defendant made three objections at different times during voir dire in response to the State's exercise of its peremptory challenges against male jurors. From the first panel of prospective jurors, the State initially struck one man, George Hardee, from the jury and accepted four other men, Larry Dale, John Hennessey, Brian Leonard, and Lenard Koenig. One woman was accepted. The Defendant did not object to the challenge of George Hardee.
The second panel of thirteen prospective jurors was brought into court. From that group, the State struck no one, and one male, Dwitt Galatas, and five females were initially accepted. At that point, the trial court allowed both sides to exercise back strikes. The defense used three back strikes on female jurors. In response to the exercise of those peremptory challenges, the State commented, "[i]f you guys are going to eliminate the women off of this jury, then I'm going to start making some back-strikes." The defense gave a gender-neutral reason for one of its back strikes.
The third panel of thirteen prospective jurors was brought into court. Following questioning, two jurors were excused for cause. Then, the State exercised two peremptory challenges in a row on male jurors, Gary Braun and Patrick Burke. The defense made its first J.E.B. objection at this time. Upon making the objection, defense counsel stated:
I'm going to object under the Batson [J.E.B.] Challenge for the State consistently knocking off men from this jury panel. As a matter of fact, Judge, [the prosecutor] told me earlier that he would do his best to keep men off of this jury ... [the prosecutor] is doing nothing but striking men from this panel.
The trial court denied the objection, finding only that no pattern of discrimination had been set. In doing so, the trial court simply ignored the comments by the prosecutor, which raised an inference of his intent to exclude male jurors.
Following this exchange, two female jurors were accepted by both sides. Then, the State announced that it wanted to exercise some back strikes. At that point the State struck one male juror from the first group, Leonard Koenig, and one male from the second group, Dwitt Galatas. The Defendant made his second J.E.B. challenge when the State made these two back strikes on male jurors. The Defendant argued that the State's two back strikes of men was "another case where the State is systematically excusing all of the men from this panel." Without comment and without requesting that the State give a gender neutral explanation for striking the jurors, the trial court denied the Defendant's objection.
The third J.E.B. objection came when the State struck another prospective male juror, Lawrence Trunk. In response to the Defendant's third Batson objection, the trial court merely noted his objection.
*776 Throughout the process, the State was never required to provide reasons for any of the peremptory strikes which it exercised against potential male jurors. The composition of the jury venire is unknown. But, the final composition of the jury was four men and eight women.
The Supreme Court has recently addressed similar problems in both the context of J.E.B. challenges and Batson challenges in State v. Givens, 99-3518 (La.01/17/01), 776 So.2d 443 and State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498, respectively. As stated in Myers, and quoted with approval in Givens, the Court explained:
The issue of purposeful ... discrimination in the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole. The trial judge observes first-hand the demeanor of the attorneys and venire persons, the nuances of questions asked, the ... composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold record. Thus, when a Batson challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race neutral reasons for the strikes.
In both Givens and Myers, upon finding that the defense had made a prima facie showing of purposeful discrimination, the Supreme Court found that the trial judge erred in not requiring the prosecutor to offer neutral explanations for the strikes, thereby failing to make the necessary observations and rulings that are integral to a review of a Batson or J.E.B. challenge. In both the former cases there was no obvious reason for the prosecutor's strikes other than race or gender. Based on the foregoing, in State v. Myers the Supreme Court found that the trial court procedure, or lack thereof, presented reversible error and remanded the case for a new trial.
In State v. Givens, however, the Court took a different approach. Although the Court found reversible error based on the record before it, the Court ruled that the record could be embellished through an evidentiary hearing, on remand. The Court outlined the procedure as follows:
We find it necessary to remand the matter to the trial court for an evidentiary hearing at which the court is to require the prosecutor to present gender-neutral reasons for the strikes. The trial court is then to make a final determination of whether the defendant has met his burden of proving purposeful discrimination. If the trial court find that the defendant cannot meet his burden under the applicable law, the defendant's conviction and sentence are affirmed. In the event that the trial court determines that the prosecutor did exercise the peremptory challenges in a discriminatory manner in violation of the Equal Protection Clause, the trial court is to grant the defendant a new trial. Both parties' right to appeal from any adverse decision regarding the J.E.B. claims is reserved.[3]
We find the instant case to be controlled by State v. Givens and State v. Myers. The Defendant made a sufficient showing to raise an inference that the prosecutor struck a venire person or persons based on gender. No obvious reason for the strikes other than gender appear of record. At that point, it was incumbent upon the trial court to require the State to give gender *777 neutral reasons for the exercise of its strikes against men and to make an ultimate ruling on the defense objection. In failing to make the necessary rulings on the J.E.B. objections, the trial court erred.
Thus, as in Givens, because it is impossible, based on the record before us, to determine whether the Defendant proved his claim that the prosecutor impermissibly struck male jurors solely because of their gender, we must remand the matter to the trial court for an evidentiary hearing on the issue. At the hearing, the trial court is to allow the prosecutor to present gender neutral reasons, if any, for the strikes objected to by the Defendant. The trial court is then to make a final determination of whether the Defendant has met his burden of proving purposeful discrimination. If the trial court finds that the Defendant cannot meet his burden under the applicable law, the Defendant's convictions and sentences are affirmed. If the trial court determines that the prosecutor did exercise the peremptory challenges in a discriminatory manner in violation of the Equal Protection Clause, the trial court is to grant the Defendant a new trial.
Accordingly, as provided above, the Defendant's convictions and sentences are affirmed in part and the case is remanded in part for further proceedings on the Defendant's claims under J.E.B. The right to appeal any adverse ruling following the hearing on remand is reserved to both parties.
CONVICTIONS AND SENTENCES AFFIRMED IN PART; REMANDED IN PART.
NOTES
[1] The Defendant was sentenced on two separate days. On February 14, 2000, he was sentenced on the aggravated rape conviction. On March 2, 2000, he was sentenced on the aggravated oral sexual battery and aggravated incest convictions. However, the commitment dated March 2, 2000 contains the sentences for the 3 convictions. Any problems with the commitment are rendered moot because of our ruling herein vacating the sentences.
[2] We note that during voir dire the parties and the trial judge referred to the Defendant's objections as "Batson" objections. However, as discussed more particularly infra, Defendant's objections to the state's use of peremptory strikes were made pursuant to J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), not Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as they were based on grounds of gender discrimination rather than racial discrimination. Accordingly, we will refer herein to the objections as gender based J.E.B. objections rather than the race based Batson objections.
[3] It is noted in Givens that the remand procedure could not be used in Myers because the trial judge had passed away and a "meaningful hearing" was, therefore, impossible.