Judgment rendered September 21, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,613-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TREVOR MARCEL WILLIAMS                      Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 19-CR-30181

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Paula Corley Marx

CHARLES B. ADAMS                       Counsel for Appellee
District Attorney

ETHAN P. ARBUCKLE
EDWIN L. BLEWER, III
Assistant District Attorneys

* * * * *

Before MOORE, ROBINSON, and HUNTER, JJ.

HUNTER, J., dissents with written reasons.

**MOORE, C.J.**

The defendant, Trevor Marcel Williams, was convicted by a jury for the second degree murder of his twin brother and for the attempted second degree murder of his girlfriend. Williams was sentenced to life imprisonment without benefit of probation, parole, and suspension of sentence consecutive to a sentence of 50 years' imprisonment without benefit of probation, parole, and suspension of sentence. He now appeals his convictions and sentences, assigning error in the trial court's handling of jury selection, specifically, its handling of a "reverse-*Batson*" challenge from the state.

## FACTS

The defendant and his twin brother, Trenton, were involved in a sexual relationship with Amanda Lowery. On April 29, 2019, Amanda picked Trenton up in her white van at the family home on Howard Lane in Frierson, Louisiana. Trenton was driving the vehicle when it stopped at the "T" intersection of Howard Lane at La. Hwy 175. At that time, Trevor drove up in a black GMC pickup that he had borrowed from his uncle, blocking the van. He jumped out of the pickup and fired five shots into the driver-side window, striking Trenton. Trevor then pulled Trenton out of the truck and fired six more rounds into him. He then he dragged Trenton's body to a ditch, got in the truck and ran over him several times. Amanda was apparently standing nearby and attempted to run away. Trevor grabbed her and shot her four times, including in the face (mouth) as she struggled to escape. She pretended to be dead or unconscious, and Trevor left the scene. She told police when they arrived that Trevor had shot them. She later gave a statement to police and testified at trial identifying Trevor as the shooter.

Following an investigation, Trevor was charged with second degree murder and attempted second degree murder.

During voir dire, defense counsel exercised peremptory challenges against eight white prospective jurors. The state raised a reverse-*Batson* challenge to the eight strikes, arguing that the pattern of striking white prospective jurors implied purposeful discrimination against white jurors. The court found that the state made a prima facie case of discrimination and requested defense counsel to articulate race-neutral grounds for each of the eight strikes. After defense counsel gave its race-neutral reasons for each of the strikes, the court recessed the proceedings. When the court reconvened, the trial judge indicated that, during the recess, she had the opportunity to evaluate each of the individuals who were subject to the reverse-*Batson* challenge by the state.[1] The court said it found that defense counsel had given "appropriate, reasonably specific, neutral explanations" for venire members Galloway, Furlow, Blue,[2] Cooper, and Franklin, and it denied those reverse-*Batson* challenges. However, the court found that the neutral reasons given by the defense for Kamilla Brown, Austin Lee, and Robert Hall were not satisfactory. For those three jurors, it granted the state's reverse-*Batson* challenge. Those three venire members were returned to the jury, and all three served as jurors in the trial. As noted, the jury unanimously found Williams guilty as charged.

After sentencing, this appeal followed. Williams's sole assignment of error is that the trial court committed legal error by granting the reverse-

---

[1] The transcript later indicates that the court had reviewed the voir dire record of each prospective juror in its evaluation.

[2] Blue was ultimately excused for cause by agreement between defense counsel and the state.

*Batson* challenge to the defendant's peremptory strikes of jurors Hall, Lee, and Brown. He seeks a judgment vacating his conviction and remanding for a new trial.

## DISCUSSION

The Constitution forbids striking even a single prospective juror for a discriminatory purpose. *Foster v. Chatman*, 578 U.S. 488, 136 S. Ct. 1737, 1747, 195 L. Ed. 2d 1 (2016); *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008). An exercise by the state of its peremptory strikes to remove potential jurors from the venire panel solely on the basis of race violates the Equal Protection Clause of the United States Constitution. *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986). The holding in *Batson* was adopted by the Louisiana Supreme Court in *State v. Collier*, 553 So. 2d 815 (La. 1989), and has been codified by the legislature in La. C. Cr. P. arts. 795(C) and (D). While *Batson* specifically concerned a prosecutor's use of peremptory challenges, its holding is equally applicable to criminal defendants. *See Georgia v. McCollum*, 505 U.S. 42, 59, 112 S. Ct. 2348, 2359, 120 L. Ed. 2d 33 (1992). *McCollum* specifically held "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." 505 U.S. at 59, 112 S. Ct. 2348. In *State v. Knox*, 609 So. 2d 803 (La. 1992), the supreme court applied *McCollum*, holding that the state may invoke *Batson* where a black criminal defendant exercises peremptory challenges against white prospective jurors. As a result of these cases, an accusation by the state that defense counsel has engaged in such discriminatory conduct has come to be known as a "reverse-*Batson* " challenge.

*Batson* and its progeny provide a three-step process to guide courts in evaluating a claim of racial discrimination in the voir dire process:

> (1) a defendant [or the State] must make a prima facie showing that a peremptory challenge has been exercised on the basis of race;
>
> (2) if the requisite showing has been made, the prosecution [or defendant] "must demonstrate that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result;'" and,
>
> (3) in light of the parties' submissions, the trial court must determine if the "defendant [or State] has established purposeful discrimination."

*State v. Crawford*, 14-2153 (La. 11/16/16), 218 So. 3d 1320.

*The Batson Inquiry*

A violation of a prospective juror's equal protection rights under *Batson* is proven by evidence of a racially discriminatory purpose, not a racially discriminatory result. *State v. Dorsey*, 10-0216 (La. 9/7/11), 74 So. 3d 603, *cert. denied*, 566 U.S. 930, 132 S. Ct. 1859, 182 L. Ed. 2d 658 (2012); *State v. Green*, 94-0887 (La. 5/22/95), 655 So. 2d 272. Thus, the sole focus of the *Batson* inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. *State v. Dorsey*, *supra*; *State v. Green*, *supra; State v. Hampton,* 52,403 (La. App. 2 Cir. 11/14/18), 261 So. 3d 993, *writ denied*, 19-0287 (La. 4/29/19), 268 So. 3d 1029.

To establish a prima facie case, the objecting party must show: (1) the striking party's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory challenge was used to strike the venire person on account of his or her being a member of that cognizable group. If the trial court determines the opponent failed to

4

establish the threshold requirement of a prima facie case (step one), then the analysis is at an end and the burden to articulate neutral reasons never shifts to the proponent of the strike (step two). *State v. Berry*, 51,213 (La. App. 2 Cir. 5/17/17), 221 So. 3d 967, *writ denied*, 17-1146 (La. 12/17/18), 257 So. 3d 1260. The burden to show a prima facie case is not to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination. *Johnson v. California*, 545 U.S. 162, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005); *State v. Broussard*, 16-1836 (La. 1/30/18), 318 So. 3d 683; *State v. Sparks*, 88-0017 (La. 5/11/11), 68 So. 3d 435, *cert. denied*, 566 U.S. 908, 132 S. Ct. 1794, 182 L. Ed. 2d 621 (2012).

When a *Batson* challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes. *State v. Myers*, 99-1803 (La. 4/11/00), 761 So. 2d 498; *State v. Hampton*, *supra*.

The burden of persuasion never shifts from the opponent of the strike. *State v. Nelson*, 10-1724 (La. 3/13/12), 85 So. 3d 21; *State v. Crawford*, *supra*. However, after the opponent of the strike establishes a prima facie case of racial discrimination, the burden of production shifts to the proponent of the strike to articulate race-neutral reasons for its use of peremptory challenges. To satisfy this second step, the explanation for the strike does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be partial due to race. *Id.* A neutral explanation must be clear,

reasonably specific, legitimate, and related to the case at bar. *State v. Mamon*, 26,337 (La. App. 2 Cir. 12/16/94), 648 So. 2d 1347, *writ denied*, 95-0220 (La. 6/2/95), 654 So. 2d 1104. The test at the second step is simply whether the reasons are facially race-neutral, not whether they are persuasive. Not until steps one and two of *Batson* have been satisfied is the trial court's duty under step three triggered. *State v. Crawford*, *supra.* In step three of the *Batson* analysis, the court must determine whether the party objecting to the peremptory challenge has carried his burden of purposeful discrimination. *Id.* The trial court's findings as to purposeful discrimination depend largely on credibility evaluations and are therefore entitled to great deference by the reviewing court. *State v. Mamon*, *supra.*

*Batson* was codified and implemented in Louisiana in 1986. The statute has been amended several times to its current version by 2019 La. Acts., No. 235, § 1:

> C. No peremptory challenge made by the state or the defendant shall be motivated in substantial part on the race or gender of the juror. If an objection is made that a challenge was motivated in substantial part on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, *the court shall demand a satisfactory race or gender neutral reason for the exercise of the challenge*. Such demand and disclosure shall be made outside of the hearing of any juror or prospective juror. The court shall then determine whether the challenge was motivated in substantial part on the basis of race or gender.
>
> D. The court shall allow to stand each peremptory challenge exercised for a race or gender neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
>
> E. The court shall allow to stand each peremptory challenge for which a *satisfactory* racially neutral or gender neutral reason is given. Those jurors who have been peremptorily challenged and for whom *no satisfactory racially*

6

*neutral* or gender neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge. (Emphasis supplied.)

In this appeal, Williams contends that the state failed to prove a "discriminatory purpose" in his peremptory challenges to Kamilla Brown, Austin Lee, and Robert Hall. He argues that he gave valid, race-neutral reasons for the strikes, and the trial court erred in finding the reasons given were not sufficient or race-neutral. We will consider each of the three peremptorily challenged jurors separately.

*Kamilla Brown*

The record shows that defense counsel's race-neutral reason for striking Kamilla Brown was "she was just young, had no life experiences, didn't really say a whole lot. I couldn't figure out exactly, you know, what she would do." After its evaluation, the court found this unsatisfactory. The court said:

> However, as to Brown, the explanation given was not clear, reasonably specific, and it wasn't a neutral explanation. I would note that, while she does look young, she appears to be twenty-eight years old, based on the information of the questionnaire. So, the Court is going to find there was not a neutral explanation given for that.

In addition to finding that the neutral explanation given by the defense was not clear and reasonably specific, it found that it was not a neutral reason due to age discrimination.

The voir dire transcript shows that Ms. Brown is a single mother with a five-year-old son. When defense counsel posed several scenarios of different types of evidence, e.g. physical, testimonial, and scientific evidence of guilt to the venire panel, he asked Ms. Brown if she could convict solely

7

on the testimony of one witness. She answered, "no." She agreed with counsel that there are good cops, but some bad cops. Counsel asked Ms. Brown if she would pick herself as a juror, and why. She answered "yes," she would pick herself because she would be fair and listen to both sides of the story and just get the evidence to base her decision.

Paragraph C of La. C. Cr. P. art. 795 expressly prohibits a peremptory challenge to a prospective juror on the basis of race or gender. However, the statute does not mention "age," although age discrimination, in some cases, violates the Equal Protection Clause. In *State v. Cannon*, 19-590 (La. 4/18/19), 267 So. 3d 585, the supreme court held that a system for picking a jury venire that excluded persons born after June 2, 1993, but otherwise qualified to serve on a jury, resulted in violation of Equal Protection under La. Const. art. 1, § 3.

On the other hand, in *State v. Mamon, supra*, the defendant raised a *Batson* challenge to the state's use of 11 peremptory challenges against prospective jury members of the same race as the defendant. One of these challenges was the state's peremptory challenge of a 21-year-old woman, Ms. Goldsmith. The state gave the court several reasons for the strike, including: her youth; possible absence from portions of voir dire; she heard about the case on the streets; she knew or knew about the defendant; she was hesitant in answering; her body language suggested inattentiveness; and she described herself as a follower. The trial court found that the state's explanations were race-neutral and denied the *Batson* challenge. On appeal, this court observed that while the neutral explanation of "inattentivenesss" that was based on "body language" was not discernible from an impassive record, each of the other reasons given by the state was supported by the voir

dire record.  It concluded, however, that among the various reasons given for the strike, only "youthfulness and lack of attention" were legitimate race-neutral explanations.  It did not disturb the trial court's denial of the defendant's *Batson* challenge.

The facts here are distinguishable from *State v. Mamon*.  Ms. Brown is 28 years old, significantly older than Ms. Goldsmith, who was age 21; the difference of seven years constitutes one-third of Ms. Goldsmith's life.  In addition to "youth," Williams gave two additional neutral reasons for this peremptory challenge to Ms. Brown: she has "had no life experiences" and she did not really say a whole lot.

Neither of these assertions is supported by Ms. Brown's responses to the questions posed during the voir dire proceedings.  Ms. Brown is a single mother of a five-year-old and has gone through a divorce and custody determination.  One can hardly draw the conclusion that she has led a sheltered life.  She also appeared very willing to answer counsel's questions.  We conclude counsel may have simply made an assumption based on Ms. Brown's youthful appearance that she had no life experiences and that she could not be a fair and impartial juror.

We conclude that the trial court was correct in finding that defense counsel's neutral reasons for exercising a peremptory challenge were not satisfactory or legitimate neutral reasons.  La. C. Cr. P. art. 795(C).  In other words, the reasons were pretextual.

*Austin Lee*

We reach a similar conclusion with respect to the peremptory challenge of Austin Lee.  Defense counsel's stated neutral explanation for exercising this peremptory challenge was, "I just couldn't get a good vibe

9

from him. I didn't feel like I could bond with him." He further noted that he was bothered that Lee said he had a boss who was the victim of a crime. Counsel concluded, "I wasn't too clear on Austin Lee. I mean, he did say everybody lied, but, you know, once again, it was just the way he answered about the victim of a crime kind of causes concern."

The transcript shows that few questions were directed to Austin Lee during voir dire. At one point, counsel told Lee that he was in his dead zone because he keeps "missing him" on questions. Lee said he works as a welder helper and he hopes to be a rig welder one day; his girlfriend works at a liquor store; he spends his spare time working on his car. When asked whether he knew anyone who had been a victim of a crime, he said, "yes, my boss." Implying that it was not a big deal to him, he stated that he was not close to his boss – they just worked together. When asked if it turned out good or bad, he said he felt like he got what he deserved; it was unclear whether Lee was speaking about his boss or the criminal.

Lee agreed that people could disagree on what constituted beyond a reasonable doubt. However, he said it did not make anyone more right or wrong. He said that if 11 jurors disagreed with him, he would try to explain himself to them. He said that he also would hope they could convince him he was wrong, but he would stand his ground if he was not convinced.

When asked if being a juror was something that would interest him or that he would like to learn about, he answered, "No." He said he did not like sitting in a courtroom, but could probably do it for a week if required. Finally, the prosecutor posed to the venire panel examples of "telling small lies," and he suggested that it was commonplace. Then he asked Lee alone

10

if he thought that every person, at one time or another, had told a lie. Lee responded that everybody has told a lie every now and then.

The trial court sustained the state's *Batson* challenge, stating:

> With respect to Mr. Lee, the information that was provided by [defense counsel] is that he could not get a good vibe and the boss was the victim of a crime. As stated by the state, nearly everybody in here knows someone who has been a victim of a crime and there was no specific discussion with him about how that would impact his ability to be a fair juror. So, the challenge is appropriate with that one.

On appeal, Williams argues that Lee's answers about crime victims caused concern and that counsel explained that he did not feel that he could get a good vibe from Lee. He further argues that Lee believes that people lie and that his boss, a crime victim, had a bad situation. Although Lee said he thought he would be a good juror, he also said he did not like being in the courtroom and was not interested in learning about being a juror. Williams contends that the reasons he gave for the strike were race-neutral, and *Batson* does not require specific reasons so long as they are "race-neutral."

While the stated reasons for defendant's peremptory challenge of Lee appear facially race-neutral, counsel's explanation that he "did not feel that he could get a good vibe from Lee" is tantamount to asking the court to accept his good faith feeling that Lee would not be a fair and impartial juror. Cf. *State v. Nelson*, *supra* (to satisfy the second step of Batson, "this explanation does not have to be persuasive, or even plausible, *but must be more than a mere affirmation of good faith* or assumption that the challenged juror would be "partial to the defendant because of their shared race"). The defendant's burden of production in step two of this reverse-*Batson* challenge is to articulate race-neutral reasons for the peremptory

11

challenge, and those reasons must be clear, reasonably specific, legitimate and related to the case at bar. *State v. Mamon*, *supra*.

The question, then, is whether defense counsel's remaining reasons meet those criteria. On review, the voir dire record does not support counsel's argument that Lee believed that everyone is a liar. Lee's response was simply that everyone has told a lie at one time or another, which was prompted by counsel's suggestion that everyone has told small lies. We also find no error in the trial court's conclusion that everybody knows someone who has been a victim of a crime, but counsel never discussed how or why that fact impacted his ability to be a fair juror.

The neutral reasons given by the defense regarding the peremptory challenge to Lee were neither clear nor legitimate. We therefore agree with the trial court that they were not sufficient to overcome the state's prima facie showing that this peremptory challenge was based on race.

*Robert Hall*

During voir dire, defense counsel asked the venire panel if anyone had any bias that could prevent him or her from being a good juror. When one venire member, Middleton, did not respond to the question, defense counsel asked him directly if he could be a fair and impartial juror. Middleton said, "I don't think I could be." Counsel asked him why, and Middleton responded, "Unfortunately, I am very biased against African Americans and Latinos." He further said that he already believed the defendant committed the crime. Both the state and defense counsel agreed, as did the court, that Middleton would be disqualified for cause.

Prior to that exchange, during early questioning of panel members, it transpired that Middleton was a member of the family who owned property

and lived at some point across the street from another prospective juror, Robert Hall. Hall said he knew Middleton; when asked, Middleton acknowledged that he now recognized Hall, but did not initially recognize him. Hall, who is much older than Middleton, said he used to hunt deer on property owned by Middleton's family across the street from his house. When asked if they were friends, Hall answered affirmatively.

Defense counsel used a peremptory challenge on Hall based on that fact. He stated, "I mainly cut [Robert Hall] because he was friends with [juror] Middleton, and I thought Middleton would have followed him."[3]

The court concluded that the reason was not valid, and the state's *Batson* challenge should be sustained:

> With respect to Mr. Hall, [defense counsel] stated that he was friends with—long term friend of Mr. Middleton. The court would note that Mr. Hall is substantially older than Mr. Middleton. Mr. Middleton, at the time of the peremptory strike, had already been stricken for cause and that was agreed upon by the state and the defense. There was no other explanation given. There was nothing that was in the record to establish that he was a racist or that he would've voted the way that Mr. Middleton might would have voted. We won't even know how Mr. Middleton would vote, because he's no longer on the jury panel. And so I believe that that also is a good [*Batson*] challenge and so he will come back on the jury.

As stated above, during voir dire, Hall said he knew Middleton because he used to hunt on property owned by Middleton's family, which had lived across the street from him. Hall said that they were friends, but that he would have no problem disagreeing with Middleton on whether or not he thought any element of the crime was proven beyond a reasonable doubt. He said he would stand his ground if he disagreed with Middleton.

---

[3] It is apparent that defense counsel meant to say that he thought Hall would follow Middleton. This assumes they would both be on the jury.

Hall said he did not think the state's burden of proving the elements of a crime beyond a reasonable doubt was too high or unfair.

In this appeal, Williams argues that notwithstanding Hall's assertion that he would have his own opinion and if he disagreed with Middleton he would stand his ground, "the fact that Hall was a close personal friend of a racist was of great concern for defense counsel who was representing a black man."

The record confirms that Hall is substantially older than Middleton and knew the much younger Middleton because his family lived across the street, and he had permission to hunt on the Middleton family's property. Although he said they were friends, the characterization is somewhat ambiguous since it is not clear whether Hall was talking about his relationship with the family in general, or specifically Middleton. We do note, however, that Middleton said he did not recognize Hall until after a while in the courtroom. This is hardly characteristic of two "close personal" friends, as defense counsel depicts the relationship. Given the substantial age difference between Hall and Middleton, Hall probably knew Middleton as one of the now-grown children in the Middleton household. The court specifically noted the substantial age difference for the record when it gave its reason for upholding the *Batson* challenge.

Finally, and perhaps most importantly, the court pointed out that by the time defense counsel exercised the peremptory strike on Hall, Middleton had already been struck for cause and would not be on the jury. There was nothing in the record to establish that Hall was a racist or would have voted the same way Middleton would have voted, which was now moot since

14

Middleton was removed for cause from the jury venire before the peremptory challenge was made.

As noted above, supplying race-neutral reasons constitutes step two of the *Batson* inquiry. In a reverse-*Batson* case like this, the defendant's burden to satisfy step two merely requires that the proponent of the peremptory strike give facially race-neutral reasons, even if not plausible, for the strike. "The burden in step two is merely one of production, not one of persuasion." *State v. Nelson*, *supra* at p. 15, 85 So. 3d at 32.

It is in step three where the court must determine whether the objecting party (here, the state) has carried its burden of proving purposeful discrimination. "This final step involves evaluating 'the persuasiveness of the justification' proffered by the striking party." *Id*. "It is not until the third step that the persuasiveness of the justification becomes relevant – the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.*, *citing Purkett v. Elem*, 514 U.S. 765, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995).

In this case, defense counsel exercised all eight peremptory challenges on white jurors. The trial court determined that the state had made a prima facie case of racial discrimination evidenced by a strong pattern of striking white jurors. After defense counsel provided facially race-neutral reasons for each of the strikes, the court evaluated those reasons in light of each juror's voir dire responses. Although it was persuaded that the race-neutral reasons were given for five of the challenged jurors were valid, it found that the race-neutral reasons given with respect to jurors Brown, Lee, and Hall were not satisfactory or legitimate, i.e. they were pretextual and did not negate the state's prima facie showing of purposeful discrimination.

15

We find no error by the trial court in sustaining the *Batson* challenge by the state with regard to prospective jurors Amanda Brown, Austin Lee, and Robert Hall.  We also find no error by the trial court when it returned those three jurors to the jury venire and allowed them to serve on the jury in this case.

We therefore conclude that this assignment is without merit, and the defendant's conviction and sentence are affirmed.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of the defendant are affirmed.

**AFFIRMED.**

**HUNTER, J., dissenting.**

To establish a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), step one of the analysis requires the objecting party to show: (1) the striking party's peremptory challenge was directed at a member of a cognizable group; (2) the challenge was peremptory, rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory challenge was used to strike the venireperson(s) on account of his or her being a member of the cognizable group.

In the instant case, the State raised the objection, arguing the defendant's use of peremptory challenges was directed at members of a cognizable group, *i.e.*, Caucasians. However, the State did not set forth circumstances "sufficient to raise an inference" of discriminatory intent.

When a *Batson* challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes. *State v. Myers*, 99-1803 (La. 4/11/00), 761 So. 2d 498. Pursuant to step two of the *Batson* analysis, the burden shifts to the striking party (in this case, the defendant) to rebut the showing of intentional discrimination, by articulating race-neutral reasons for their use of the challenges. This explanation does not have to be persuasive, or even plausible. Unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race-neutral. *Purkett v. Elem*, 514 U.S. 765, 115 S. Ct. 769, 131 L. Ed. 2d (1995); *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991); *Batson*, *supra*; *State v. Nelson*, 10-1724 (La. 3/13/12), 85 So. 3d 21. In step three of the *Batson* analysis,

1

the court must then determine whether the objecting party has carried his

burden of proving purposeful discrimination. *Miller-El v. Dretke*, 545 U.S.

231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005); *Batson*, *supra*; *Nelson*,

*supra*.

When asked to provide race-neutral reasons for exercising the

peremptory challenges to strike three particular prospective jurors, defense

counsel proffered race-neutral reasons which are summarized as follows:

> *Austin Lee*
> Defense counsel stated he "just couldn't get a good vibe from
> him. I didn't feel like I could bond with him." Counsel also
> noted Lee had stated he had a former boss who had been the
> victim of a crime, and he had expressed "everybody lies." The
> trial court granted the *Batson* challenge with regard to Lee,
> stating, "[N]early everybody in here knows someone who has
> been a victim of a crime and there was no specific discussion
> with him about how that would impact his ability to be a fair
> juror."

> *Robert Hall*
> Defense counsel stated he was challenging Hall because Hall
> stated he was friends with another prospective juror who had
> admitted to being a racist. The trial court sustained the *Batson*
> challenge with regard to Hall, noting the friend who had
> professed to being a racist "had already been stricken for cause
> and that was agreed upon by the State and the defense." The
> court noted there was nothing in the record to establish Hall
> was a racist or that he "would've voted the way [his friend]
> might would have voted."

> *Kamilla Brown*
> Defense counsel stated Brown was "just young, had no life
> experiences, didn't really say a whole lot." The trial court
> noted although Brown did "look young," her questionnaire
> indicated she was 28 years old. The trial court found defense
> counsel failed to provide a sufficient race-neutral explanation
> for challenging Brown.

A review of the jurisprudence reveals courts have accepted a myriad

of race-neutral justifications for striking jurors. *See*, *e.g.*, *Purkett*, *supra*

2

(State's proffered explanation for striking the juror because he had long, unkempt hair, a mustache, and a beard was race-neutral and satisfied *Batson's* step two burden of articulating a nondiscriminatory reason for the strike); *Hernandez*, *supra* (Prosecutor's justification for striking two bilingual Latino jurors because he "fe[lt] very uncertain that they would be able to listen and follow the interpreter" was plausible and sufficiently race/ethnic-neutral); *State v. Scott*, 04-1312 (La. 1/19/06), 921 So. 2d 904 (State's justification for striking a prospective African-American juror, that she had a son the same age as defendant and would feel sympathy for defendant's mother, was sufficiently neutral to survive a Batson challenge), *cert. denied*, 549 U.S. 858, 127 S. Ct. 137, 166 L. Ed. 2d 100 (2006); *State v. Wilson*, 40,767 (La. App. 2 Cir. 8/23/06), 938 So. 2d 1111 (Prosecutor offered legitimate, race-neutral reason for striking an African-American juror when it argued that the juror was a minister's wife and might hesitate to impose the death penalty), *writ denied*, 06-2323 (La. 4/20/07), 954 So. 3d 159, *cert. denied*, 552 U.S. 917, 128 S. Ct. 275, 169 L. Ed. 2d 201 (2007); *State v. Parker*, 04-1017 (La. App. 5 Cir. 3/29/05), 901 So. 2d 513 (When accepted by the trial judge, the lodging of a peremptory challenge based on a juror's body language does not violate *Batson*), *writ denied*, 05-1451 (La. 1/13/06), 920 So. 2d 235; *State v. Woods*, 97-0800 (La. App. 1 Cir. 6/29/98, 713 So. 2d 1231) (Prospective juror's mistaken belief that the prosecutor had represented the prospective juror in a lawsuit was a legitimate, race-neutral justification for the state's peremptory strike), *writ denied*, 98-3041 (La. 4/1/99), 741 So. 2d 1281.

In *State v. Nelson*, *supra*, the defendant articulated reasons for striking Caucasian jurors including the following: being "pro-prosecution";

3

expressing reservations about defense alibis; "strongly-favoring" the prosecution "in the sense of being okay with people who flip"; expressing a belief it was the defendant's burden to disprove his guilt; not appearing to be "serious about jury service" due to arriving late, offering "flippant" responses to questions, and flirting with a female juror; seeming "to be very pro-police"; and offering "negative views" about alibi witnesses. The Supreme Court stated:

> While the trial court found the number of challenges against white jurors to be "eyebrow raising," we find defendants presented plausible and reasonable race-neutral reasons that negate an inference of purposeful racial discrimination sufficient to satisfy step two of *Batson*. Whether the reasons are substantial, or whether they are supported by the record, is a question to be determined in the third stage of the *Batson* analysis.
>
> ***
>
> After reviewing the record, it is clear the trial court merged the steps of the *Batson* analysis which improperly shifted the burden of proof to defense counsel – the proponent of the strike. The record unquestionably demonstrates the trial court never made a finding that the race neutral reasons offered by defendants were pretextual. Although none of the proffered reasons appears to inherently violate equal protection, the court nonetheless rejected nine of them for no specific reason. In rejecting defendants' proffered race-neutral reasons, the trial court reasoned that defendants failed to rebut the State's prima facie case of discrimination, essentially finding the defendants' reasons not persuasive enough. The court erred in putting the burden of persuasion on the defendants.

*Id*. at 32-33.

In the instant case, I believe the defendant presented plausible and reasonable race-neutral reasons negating the inference of purposeful racial discrimination. As stated above, the articulated race-neutral reasons do not have to be persuasive, or even plausible. Further, the trial court erred in failing to make a finding that the race-neutral reasons offered by defendants

4

were pretextual, and erred in placing the burden on defendant to show he did not purposefully discriminate.

Due to the *Batson*-related legal errors, which permeated the voir dire proceedings, I believe we are compelled to reverse, vacate the defendant's convictions and sentences, and remand this matter to the trial court for a new trial.

Accordingly, I dissent.